AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

District of South Dakota

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

DVD containing the August 21, 2019, download of the encrypted compressed storage file containing the content of the Facebook user account associated with the user name "Eric Cross" and Facebook user id: 100002049511099 which is in secure storage at the Rapid City Office of the Federal Bureau of Investigation

)
)
)
)
)
)

Case No.  5:19- MJ- 113

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachments A & B

located in the _____ District of _____ South Dakota _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachments A & B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| | |

The application is based on these facts:

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

FBI SA Chris Reinke
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  9-13-19

_____
*Judge's signature*

City and state:  Rapid City, SD

Daneta Wollmann, U.S. Magistrate Judge
*Printed name and title*

cc: AUSA DeCoste and Agent
via email

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: DVD containing the August 21, 2019, download of the encrypted compressed storage file containing the content of the Facebook user account associated with the user name "Eric Cross" and Facebook user id: 100002049511099 which is in secure storage at the Rapid City Office of the Federal Bureau of Investigation | Case No. ___5:19-MJ-113___<br><br>**REDACTED COPY**<br><br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

State of South Dakota ) 
                   ) ss
County of Pennington )

    I, Chris Reinke, Special Agent of the Federal Bureau of Investigation FBI being duly sworn, states as follows:

### INTRODUCTION AND AGENT BACKGROUND

    1.    I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI), and I am assigned to the Rapid City Resident Agency, Rapid City, South Dakota. I have approximately five years of law enforcement experience with the FBI as a Special Agent. During that time, I have investigated federal crimes occurring within Indian country, including violations of 18 U.S.C. §§ 2241(a)(1)

and 1153, Aggravated Sexual Assault by Force, and 18 U.S.C. §§ 2243 and 1153, Sexual Abuse of a Minor.

2.      The information set forth below is based upon my knowledge of an investigation conducted by the FBI and the investigation of other law enforcement agents and officers.  I have not included each and every fact obtained pursuant to this investigation, but have set forth those facts that I believe are essential to establish the necessary probable cause for the issuance of the search warrant.

3.      I make this affidavit in support of an application for a search warrant for information associated with a certain Facebook user ID that is stored at premises owned, maintained, controlled, or operated by Facebook Inc. ("Facebook"), a social networking company headquartered in Menlo Park, California.   The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2241(a)(1) and 1153, a violation of Aggravated Sexual Assault by Force, 18 U.S.C. §§ 2243 and 1153, a violation of Sexual Abuse of a Minor, 18 U.S.C. §§ 2251(a) and 1153, a violation of Sexual Exploitation of Children, 18 U.S.C. §§ 2252A(a)(3)(B)(i) and 1153, a violation of Solicitation of Child Pornography, and 18 U.S.C. § 1505, a violation of Obstruction of Justice, (hereinafter "Target Offenses") to require Facebook to disclose to the government records and other information in its possession

2

pertaining to the subscriber or customer associated with the user ID, as described in Attachment B.

4.    The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5.    Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that evidence of violations of the Target Offense are present in the account of Facebook user Donald Eric Cross with Facebook User ID: 100002049511099 that are stored at premises controlled by Facebook Inc. (hereinafter "the account").  There is also probable cause to search the information described in Attachment A for evidence, contraband, or fruits of these crimes, as further described in Attachment B.

6.    Your affiant respectfully submits that there is probable cause to believe that Donald Eric Cross committed the crimes of aggravated sexual abuse by force and sexual abuse of a minor using Facebook account bearing User ID: 100002049511099, and that evidence of those crimes will be found in the content of the encrypted compressed storage file provided to me on Facebook's law enforcement portal in response to a previous search warrant.  I thereafter downloaded the file, but did not review the contents of the file, nor did I provide

access to the file for anyone else to view.  The downloaded file is currently in the possession of the FBI.  This affidavit is sought to search the contents of the downloaded file.

7.    "Encrypted compressed storage file" as used herein, refers to a computer file whose contents of one or more files are compressed for storage or transmission, one example is a "zip file."  The compressed storage file is used to large files or multiple files into one file for ease of transfer.  The ESPs create the file then provide access to the file to law enforcement typically via the ESP's law enforcement portal.

8.    "Zip file," as used herein is a type of "Encrypted compressed storage file," defined above in paragraph 1.

9.    From my training and experience, I am aware that when Electronic Service Providers, like Facebook, provide access to an encrypted compressed storage file, typically a zip file, on its law enforcement portal.  The link is to a file that is limited to the content of the account authorized by the search warrant and no other accounts.

10.    It is my understanding that I must seek this additional warrant to review the responsive materials out of an abundance of caution to comply with

4

the issue raised in the recent decision in *United States v. Nyah*, 928 F.3d 694 (8th Cir. 2019).

### PROBABLE CAUSE

11.     Cross is a self-proclaimed "medicine man" who purports to help individuals in the Native American community with their spiritual issues or problems.   He performs spiritual ceremonies such as sun dances and sweat ceremonies for members of the community and has been doing so for approximately the past 20 years.  Followers in need of spiritual guidance, support, or healing often seek him out for his assistance.

12.     On or about November 7, 2018, Shiloh Comeau was interviewed regarding numerous suspected sexual assaults by Donald Eric Cross against women in his community.  Shiloh Comeau was a romantic partner of Cross from approximately 2009 through 2014, and she advised agents, "[Cross] would often be on his phone sending messages and texts to other women asking them to send him pictures of themselves in swimsuits."

13.     Shiloh Comeau was reinterviewed by your affiant on January 15, 2019.  She advised though they each had accounts, Cross did not like Shiloh talking to other people online because he would get jealous.  This led Shiloh to not really use Facebook that often while she was dating Cross; however, Cross continued to constantly post and send messages on Facebook and on his smartphone.  Sometime after Cross' mother passed away in May 2013, Shiloh

noticed a message coming through to Cross' phone. They were in a fight at the time and Shiloh had Cross' phone in her car. She saw that the message was from a girl named Crystal LNU from California and she was responding to multiple messages that Cross had sent her, where he had asked her to send him pictures of her in a swimsuit.

14.     Your affiant is aware that Charlotte Two Eagle is a former girlfriend of Cross. She was interviewed on January 16, 2019, and advised Cross was constantly on his phone and using Facebook while she was dating him. They met in 2014 via Facebook and during the course of their four-year relationship exchanged sexually explicit pictures and messages on the social media platform. Charlotte observed Cross sending sexually explicit messages on his cell phone and via Facebook while they dated. Anita Bia [Bia], Cross' "spiritual ex-wife,"[1] broke up with Cross recently because she caught him exchanging sexual messages and photographs on his phone and on Facebook. When Charlotte called Cross a fraud and detailed the bad things he did to her via a Facebook wall post on October 3, 2018, she received over 400 comments from other women on Facebook who had similar stories of abuse or who offered her encouragement. Many of these women sent her direct messages on Facebook

---

[1] A "spiritual wife" as used here indicates a relationship that two individuals share where they are not formally married, but consider themselves bound in a marriage that is codified at a spiritual ceremony. Cross has had one legal wife, Kelly Faerber, and then was spiritually married to Margaret Brave Heart and Anita Bia to your affiant's knowledge. Cross only long-term dated Shiloh Comeau and Charlotte Two Eagle.

detailing the abuse they suffered and offering to help her. The women claimed Cross raped them or asked them for naked pictures, and a few of the women said that Cross "did things" to their underage daughters when he was visiting them.

15. Your affiant is aware Charlotte Two Eagle was interviewed again on January 18, 2019. Then, she provided information that Cross maintained accounts with Snapchat and Instagram with account usernames "Eric Cross." He also utilized numerous email accounts, one of which, eric.cross.sc.3028@gmail.com, was specifically created to be used with his then-spiritual wife, Shiloh Cross, hence the "sc" in the email. Charlotte opined that Cross had similar named accounts for the other women in his life.

16. An individual named Natalie Cota-Garcia was interviewed on January 18, 2019. Cota-Garcia met Cross on Facebook in 2014 when he began liking her pictures and following her activity online. Eventually he traveled to Paducah, Kentucky, to meet Cota-Garcia in person. They spent one night together in a hotel and had sex before traveling to the Cherokee Heritage Center in Hopkinsville, Kentucky, the next day. While visiting the center, Cross began groping Cota-Garcia in public which made her uncomfortable. She told Cross to stop which upset him, and from then on his demeanor with Cota-Garcia changed. Cross was more distant and angry when dealing with Cota-Garcia than he previously had been. Throughout the period the two were communicating online, Cota-Garcia advised Cross asked her for naked pictures on numerous occasions. Cota-Garcia never

7

sent him naked pictures of herself, but Cross sent her photographs of his genitalia, colloquially known as "dick pics," that he took of himself while sitting on the toilet. Cross asked Cota-Garcia many times to move out to Rapid City, South Dakota, to be closer to him. Cota-Garcia declined. She recently moved out to the area after getting a job with the Veterans' Administration in Hot Springs, South Dakota, as an operator at the call center located there. Cota-Garcia believes Cross may have filmed her or taken nude photographs of her after they had sex in the Paducah hotel room. He asked her to pose and sleep in specific positions, which she found odd at the time. Given the young nature of their relationship, she did not think more of it.

17.    Rhonda Long Soldier was in a relationship with Cross' brother, Dana Cross, which lasted approximately ten years. Long Soldier has known Cross since 2009. Your affiant is aware she was interviewed on February 22, 2019. Then, she provided that sometime last summer, Cross brought home a young girl who appeared to be approximately 15-17 years of age. Long Soldier was unsure of her name, but thought it might be something like ▇▇▇▇. or ▇▇▇▇▇▇▇▇ ▇▇▇▇. Long Soldier spoke with Kirsten when she arrived. At the time she arrived, the Cross family including Cross, Long Soldier, Damen Long Soldier, and other unknown members of the Cross family were outside having a family barbecue. ▇▇▇▇ told Long Soldier that ▇▇▇▇ met Cross online on Facebook. ▇▇▇▇ knew he was a medicine man and that he could potentially help her out with the personal issues she was having. ▇▇▇▇ advised she was going through

8

some problems at home which Cross said he could help her with.  He had invited
███████ to come out to his house to stay with him and receive help for the
problems she was going through.  Although she was underage, Cross bought
███████ cigarettes and Crown Royal whisky, which ███████ drank out of a jug.  At
some point in the day, Cross told ███████ to follow him into his bedroom so that
he could help her spiritually.  Approximately 20 minutes later she came out of
his room and told Long Soldier, "He's supposed to help me, but he seems like he
wants more than that.  Oh my God I have a boyfriend." ███████ believed she
would be attending a sweat ceremony with Cross, but Long Soldier informed her
that he only did sweats on Saturdays and some Wednesdays.  The day Cross
invited ███████ to the residence was neither a Saturday nor a Wednesday.  Long
Soldier thought ███████ looked scared and nervous when she left Cross' bedroom.

18.     Your affiant is aware that Bia, Cross' spiritual ex-wife, was interviewed
on February 25, 2019.  Then, she advised while in Indiana with Cross, Bia became
frustrated because Cross' phone kept making noises.  She looked at his phone
and saw that he was in numerous simultaneous conversations with other
women.  The women were having sexual and romantic conversations with Cross
to include sending photographs of themselves, and Bia saw Cross had proposed
to many of these women.  Bia counted approximately five or six women that were
"sexting[2]" with Cross, around six or seven women that Cross proposed to, and

[2] This is in reference to sexually explicit chat messages and/or exchanges of
sexual commentary.

between 25 and 30 women that Cross was conversing with online. Bia decided to leave Cross. She left him while the pair were still in Indiana. After a few hours, she decided to turn back around and work with Cross. Bia confronted him about the other women. Cross told her that he would change his behavior. Despite the fact that Bia almost left Cross and caught him cheating on her, he continued to act erratically and aggressively with Bia to an even greater degree. Multiple women contacted Bia via Facebook Messenger to let her know about Cross hitting on them or trying to start a relationship with them online. When she confronted Cross about the other women he denied it and said they were jealous and angry because he denied them. Similarly, multiple women from New Mexico told Bia how Cross sent them pictures of his penis and asked them to send him naked pictures. Around three or four years ago, Cross sent Bia a "dick pick" of his penis along with numerous sexual memes via Facebook Messenger. Bia ignored the messages because she did not like the pictures.

19.      Your affiant reviewed the October 3, 2018, Facebook post by Charlotte Two Eagle and its subsequent comments. One comment, posted October 12, 2018, by Jessy Patience Yellowhawk, revealed a screenshot of text messages Yellowhawk received from Cross' phone in 2014. Cross sent her a series of texts calling her beautiful and asking her to go for a ride with him to "Atown." The text messages reveal a series of communications by Cross to which Yellowhawk did not respond and are included below:

    a. On October 24, 2014 at 10:14PM Cross wrote Yellowhawk: "Sup?"
    b. On October 25, 2014, at 11:07AM Cross wrote Yellowhawk: "Good morning beautiful"
    c. On November 2, 2014, at 9:15AM Cross wrote Yellowhawk: "Fell like cruising to Atwn"
    d. On November 2, 2014, at 9:52AM Cross wrote Yellowhawk: "Took a cruise to Atwn n now heading back to Kyle"

20.    Cross is an enrolled member of the Oglala Sioux Tribe.

21.    In the fall of 2018, Cross invited ███████████████, to visit him at his Rapid City residence. ███ date of birth is ██████. At the time of Cross' invitations to her, ██ was 16 years of age. Cross was aware that ███ mother, Rhonda Long Soldier, had recently entered into a rehabilitation/treatment program in Pine Ridge and ██ needed a place to stay. Initially ██ would spend weekends at Cross' Rapid City residence, but near the end of 2018, she moved in and was given her own room in Cross' basement. After a month or so, Cross began acting strangely toward ██, to include slapping her on the butt and making weird sexual comments to her. ██ would just laugh it off or tell Cross, "don't do that weirdo." One morning in late January 2019, while ██ was sleeping in her basement bedroom, Cross jumped on top of her and woke her up. He was wearing shorts and ██ was wearing her pajamas. Cross told ██ "good morning" and then began to force himself and grind on her. ██ tried to push Cross off of her, but he just kept his body on top so she couldn't move him. Cross told ██, "shhhhh, Matthew's in there sleeping," because he wanted her to be quiet due to Matthew's room being next door to ██. Cross' legs were straddling ██ and he was using his hands to overpower and hold her down. Cross then pulled down ██ shirt

11

and sucked on her breast. He also kissed her on her cheek. ▮ told Cross, "Don't you pervert... I'm gonna tell". When ▮ said this Cross jumped off of her and went upstairs.

22.     Your affiant interviewed a victim of Cross's aggravated sexual abuse, ▮▮▮▮▮, on February 13, 2019. Your affiant is aware that Cross forcibly sexually assaulted ▮▮▮ when she was 16 years of age in 2012. During that interview, she advised that in approximately 2014 Cross attempted to connect with her via Facebook Messenger. The content of that message was along the lines of "What's up?" ▮▮▮ did not respond to Cross's Facebook message. It is likely that ▮▮▮, his previous minor victim, was not yet 18 years old at the time Cross sent this message.

23.     Your affiant believes based on Cross's other conduct toward women via Facebook Messenger, there is probable cause to believe that Cross was attempting to engage in behavior which includes sending pornographic images of himself to ▮▮▮ who at the time was likely still a minor, or enticing ▮▮▮ to send him pornographic images of herself, a minor at the time.

24.     On May 29, 2019, Cross was arrested pursuant to a warrant issued after the grand jury found probable cause that Cross committed the offenses of Aggravated Sexual Abuse, in violation of 18 U.S.C. §§ 2241(a)(1), 2246(2)(A), and 1153, and Sexual Abuse, in violation of 18 U.S.C. §§ 2242(2), 2246(2)(A) and 1153. His initial appearance was scheduled before the Honorable Magistrate Judge Daneta Wollmann that same day. At Cross's initial appearance, the

defendant requested to continue the detention hearing until such time as a release plan could be arranged.  The Magistrate Judge scheduled a detention hearing for May 31, 2018, and issued an order releasing Cross to Community Alternatives of the Black Hills (CABH) where he was to reside until his detention hearing.

25.     Your affiant became aware on May 31, 2019, that Cross absconded from CABH around 10:30PM on May 30, 2019.  Cross was observed on video leaving CABH.  He can be seen walking from CABH toward the driver's license facility near Catron Blvd.  His whereabouts were unknown at this time.

26.     Your affiant was provided screenshots of communications sent by Cross to at least two individuals.

27.     On May 29, 2019, at approximately 10:46AM, Cross sent an SMS text message from his phone to Supervisory Deputy United States Marshal Lisa Whiteface which read, "Hey Lisa!!. Is this still your number??.. lol"

28.     Your affiant photographed this message Cross sent to Supervisory Deputy United States Marshal Lisa Whiteface.

29.     On or about between his release to CABH on May 29, 2019, and his absconsion from CABH on May 30, 2019, Cross used Facebook Messenger to communicate with another individual, Louisa Muskovits.  The screenshots of these messages and entire conversation are incomplete, and the following exchange occurs in the middle of their conversation.  In the screenshots, Ms.

13

Muskovits states, "Just tell your side" to which Cross responds, "So if in [sic] losing then I just might give up."

30.    Your affiant is aware that Cross uses Facebook Messenger to communicate with individuals throughout the community. Your affiant is also aware that during his release to CABH, Cross was communicating with individuals via Facebook Messenger. Your affiant is aware through the investigation of this case that Cross is a prolific Facebook Messenger user, and that Facebook Messenger is Cross's primary means of communication with female individuals to whom he is attracted. Your affiant has screenshots which evidence Cross discussing the circumstances of his present federal case. Your affiant believes it is likely that Cross used Facebook Messenger to reach out to an ally in the community who would come retrieve him from CABH on May 30, 2019, in violation of his court ordered release to CABH. Your affiant also believes the text message sent to Supervisory Deputy United States Marshal Lisa Whiteface was sent with the intent to corruptly influence, obstruct, or impede the due and proper administration of the law.

31.    Your affiant believes Cross used Facebook Messenger in the past to entice women between the ages of 16 and 50 years of age for various reasons to include requesting to send images of himself and request they send images of themselves to him. Cross has also been known to invite these women to meet with him in person, as witnessed by Ronda Long Soldier in the summer of 2018,

14

for the purpose of secluding them, intoxicating them, and sexually assaulting them.

32.     Your affiant believes there is probable cause based on information provided by witnesses and Cross's conduct to believe that a search of Cross's Facebook Messenger will yield evidence of multiple crimes to include evidence of the crimes for which Cross was indicted by the grand jury on May 21, 2019, Aggravated Sexual Abuse, in violation of 18 U.S.C. §§ 2241(a)(1), 2246(2)(A), and 1153, and Sexual Abuse, in violation of 18 U.S.C. §§ 2242(2), 2246(2)(A), and 1153.

33.     Your affiant believes there is probable based on information provided by witnesses and Cross's conduct to believe that a search of Cross's Facebook Messenger will yield evidence of the crimes of Sexual Exploitation of Children, in violation of 18 U.S.C. §§ 2251(a) and 1153, and Solicitation of Child Pornography, in violation of 18 U.S.C. §§ 2252A(a)(3)(B)(i) and 1153.

34.     Your affiant believes there is probable cause based on information provided by witnesses and Cross's conduct to believe that a search of Cross's Facebook Messenger will yield evidence of the crime of Obstruction of Justice, 18 U.S.C. § 1505, relating to his conduct of evading detention and apprehension on May 31, 2019, through present.

35.     On July 5, 2019, I sought and obtained a search warrant for the Facebook account at issue. I executed the court's search warrant the same day by serving it on Facebook via its law enforcement portal. Facebook did not provide

the responsive materials within 14 days of the issuance of this Court's search warrant. I received the original return from Facebook on that search warrant on August 11, 2019. On August 20th, your affiant's office attempted to download the files without success. Your affiant requested Facebook resend the inaccessible material. Facebook did so on August 21, 2019.

36.    On August 21, 2019, your affiant's office was able to download the information from the material from the law enforcement portal. The information was in the form of a zip file, a PDF file, and included a Certificate of Authenticity. Your affiant's office printed the Certificate of Authenticity, then burned the zip file and PDF file to a DVD on that same date, August 21, 2019.

37.    Although the information was accessed, it was accessed solely for the purpose of confirming the file is accessible. To date, no parties to this warrant have reviewed the material contained on the DVD. I have not opened or analyzed the content and I have not provided access to any other person to review the content of the file. The encrypted compressed storage file is being held securely at the FBI office in Rapid City, awaiting this search warrant.

38.    Your affiant, in consideration of the recent development in the Eighth Circuit, the *Nyah* decision of June 26, 2019, submits this request to search the DVD created on August 21, 2019, which contains the material provided by Facebook which was received by your affiant's office outside the 14-day window on the original search warrant dated July 5, 2019.

16

## INFORMATION ON FACEBOOK

39.     Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook allows individuals to specifically communicate with another person through a Facebook application called "Messenger." In my training and experience, people who engage in online criminal activity often also utilize Facebook to meet victims and other offenders and to chat. Even if Facebook was not utilized in the chat at issue, there is probable cause to believe there will be evidence regarding the online solicitation of minors within the target Facebook account.

40.     Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

41.     Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers (for password retrieval), physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

42. Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

43. Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

44. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos,

photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

45.     Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

46.     Facebook users can exchange private messages on Facebook with other users. These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information. Facebook users can also post

19

comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a Chat feature that allows users to send and receive instant messages through Facebook. These chat communications are stored in the chat history for the account. Facebook also has a Video Calling feature, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

47.    If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

48.    Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third party (i.e., non-Facebook) websites.   Facebook users can also become "fans" of particular Facebook pages.

49.    Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.   Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or

adding someone as a friend.  The activity log is visible to the user but people who visit the user's Facebook page cannot viewed it.

50.    Facebook Notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.

51.    The Facebook Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page.  Gifts cost money to purchase, and a personalized message can be attached to each gift.  Facebook users can also send each other "pokes," which are free and simply result in a notification to the recipient that he or she has been "poked" by the sender.

52.    Facebook also has a Marketplace feature, which allows users to post free classified ads.  Users can post items for sale, housing, jobs, and other items on the Marketplace.

53.    In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform.   When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.  Facebook uses the term "Neoprint" to describe an expanded view of a given user profile.  The "Neoprint" for a given user can include the following information from the user's profile:  profile contact information;  News  Feed  information;  status  updates;  links  to  videos, photographs,  articles,  and  other  items;  Notes;  Wall  postings;  friend  lists,

21

including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications.

54.     Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

55.     Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support

services, as well as records of any actions taken by the provider or user as a result of the communications.

56.    As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's "Neoprint," IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the user accessed or used the account.  For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date.  By determining, the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation.    Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events

relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

57. Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

58. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. § 2703, by using the warrant to permit access to the encrypted compressed storage file previously provided by Facebook according to a search warrant. The file is particularly described in Attachment A. Upon receipt of the warrant, the government-

24

authorized persons will review the contents of the file to locate the items described in Section II of Attachment B.

## REQUEST/JUSTIFICATION FOR ORDER OF NONDISCLOSURE

59.   The United States respectfully applies for an order of nondisclosure to Facebook under 18 U.S.C. § 2705(b) regarding the account associated with username Facebook user Eric Cross with Facebook User ID: 100002049511099 that is stored at premises controlled by Facebook Inc. (hereinafter "the account"). The United States is seeking this search warrant for user information, including all names, addresses, IP addresses, including historical, telephone numbers, other email addresses, information on length and types of services and any means of payment related to these accounts under the authority given by 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A).   Based on § 2703(c)(3), the United States is not required to provide notice to the subscriber.   Under § 2705(b), the United States may apply to the court for an order commanding Facebook not to notify the subscriber of the existence of the search warrant. The court may decide what length of time shall apply to the order of nondisclosure if the court determines the notification to the subscriber could result in one of the five factors listed in the statute, which includes destruction of or tampering with evidence.   18 U.S.C. § 2705(b)(3).   The basis for the request is that such disclosure could cause any person with access to the accounts, or any related account or account information, to tamper with or modify the content or account information and thereby destroy or tamper with evidence and otherwise seriously

jeopardize the investigation. Especially due to the ease of access to Facebook, its content can be modified by persons with internet access and sufficient account information. As such, the United States respectfully requests this Court enter an order commanding Facebook not to notify the user of the existence of this warrant.

### REQUEST FOR SEALING

60.    I request that the Court order that all papers submitted in support of this application, including this affidavit, the application, the warrant, and the Order itself, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

### CONCLUSION

61.    Based on the forgoing, I request that the Court issue the proposed search warrant.

62.    This Court has jurisdiction to issue the requested warrant because it is "a magistrate court with authority in the district [and] . . . has authority to

issue a warrant to search and seize . . . property located within the district." Fed.

R. Crim. P. 41(b)(1).

Dated: 9/13/2019

_____
Chris Reinke, Special Agent
Federal Bureau of Investigation

SUBSCRIBED and SWORN to in my presence
this 13th day of September, 2019.

_____
DANETA WOLLMANN
UNITED STATES MAGISTRATE JUDGE

27

## ATTACHMENT A

### Property to Be Searched

This warrant applies the DVD containing the August 21, 2019, download of the encrypted compressed storage file containing the content of the Facebook user account associated with the user name "Eric Cross" and Facebook user id: 100002049511099 which is in secure storage at the Rapid City Office of the Federal Bureau of Investigation.

## ATTACHMENT B

### Particular Things to be Seized

All information described below that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. §§ 2241(a)(1) and 1153, Aggravated Sexual Assault by Force, 18 U.S.C. §§ 2243 and 1153, Sexual Abuse of a Minor, and 18 U.S.C. § 1505, Obstruction of Justice, from January 1, 2014, until the date of the warrant, for the user ID identified on Attachment A:

(a)   All contact and personal identifying information, including for Facebook user ID:   "Eric Cross" under Facebook user id: 100002049511099: full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)   All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

(c)   All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them;

(d)   All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a

member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)    All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

(f)    All "check ins" and other location information;

(g)    All IP logs, including all records of the IP addresses that logged into the account;

(h)    All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(i)    All information about the Facebook pages that the account is or was a "fan" of;

(j)    All past and present lists of friends created by the account;

(k)    All records of Facebook searches performed by the account;

(l)    All information about the user's access and use of Facebook Marketplace;

(m)    The types of service utilized by the user;

(n)     The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(o)     All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(p)     All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

District of South Dakota

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>DVD containing the August 21, 2019, download of the encrypted<br>compressed storage file containing the content of the Facebook user<br>account associated with the user name "Eric Cross" and Facebook<br>user id: 100002049511099 which is in secure storage at the Rapid<br>City Office of the Federal Bureau of Investigation | )<br>)<br>)<br>)<br>)<br>)<br>) Case No.   5:19- MJ-113 |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search
of the following person or property located in the _____ District of _____ South Dakota
*(identify the person or describe the property to be searched and give its location)*:

DVD containing the August 21, 2019, download of the encrypted compressed storage file containing the content of the
Facebook user account associated with the user name "Eric Cross" and Facebook user id: 100002049511099 which is in
secure storage at the Rapid City Office of the Federal Bureau of Investigation.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property
described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

evidence of a crime (incorporate Attachments A & B)

**YOU ARE COMMANDED** to execute this warrant on or before *Sept. 27, 2019* *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.        ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the
person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the
property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory
as required by law and promptly return this warrant and inventory to _____ Daneta Wollmann _____ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C.
§ 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose
property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:      *9-13-19   12:05 pm*        _____
*Judge's signature*

City and state:      Rapid City, SD _____        Daneta Wollmann, U.S. Magistrate Judge
*Printed name and title*